Argued February 7, decided February 20, 1912.

## BURRELL *v*. CITY OF PORTLAND.

[121 Pac. 1.]

MUNICIPAL CORPORATIONS—OFFICERS—STATUTORY PROVISIONS—CONTRACT OF EMPLOYMENT.

1. Portland City Charter, § 118½, empowered the city to construct a bridge and to issue bonds therefor to a certain ·amount, and by section 304 provided, that the city engineer should keep himself informed of the condition of all public streets, bridges, etc., and that all plans and specifications for the construction therefor should be made by him or under his supervision, and section 305 provided that the city engineer should be the consulting engineer of all boards and commissions authorized by the charter without salary other than that as city engineer. *Held,* that the city counsel had the power to make a contract of employment with an outside consulting engineer to prepare plans and specifications for the bridge.

MUNICIPAL CORPORATIONS—CHARTER—CONSTRUCTION OF GRANT OF POWERS.

2. The grant of an express statutory power carries with it by necessary implication every other power necessary and proper to the execution of the power expressly granted.

MUNICIPAL CORPORATIONS—OFFICERS—STATUTORY PROVISIONS—CIVIL
    SERVICE REGULATIONS.

3. The charter of the City of Portland, providing by section 306
that all appointments to and promotions in the subordinate adminis-
trative service of the city should be made by a competitive examin-
ation, and expressly exempting therefrom the city engineer, was not
intended to apply to an outside special consulting engineer employed
by the city for the drawing of plans and specifications for the construc-
tion of a bridge authorized by section 118½ of its charter.

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—MODE OF DOING
    WORK—INJUNCTION.

4. Where the charter of the City of Portland by section 118½
authorizes the construction of a bridge and the issuance of bonds
therefor for a large amount, the quality of material and ornamenta-
tion and the cost thereof are matters resting in the discretion of the
executive board of the city council, and its decision as to whether
the contract shall be let on a unit plan or by some other method
will not be interfered with, in the absence of a showing of fraud or
manifest abuse of discretion.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Statement by MR. JUSTICE BEAN.

This is a suit by W. F. Burrell against the City of
Portland, to declare illegal and to enjoin the further
execution of two contracts, one between the City of
Portland and defendant Ralph Modjeski for drawing
plans and supervising the construction of a bridge over
the Willamette River, and the other between the city
and the Union Bridge & Construction Company for the
building of the substructure of such bridge, and the
bond given for the faithful performance thereof. The
trial court sustained a general demurrer to the com-
plaint and dismissed the suit. Plaintiff appeals.

The principal averments to the complaint are as fol-
lows: The plaintiff is a citizen and taxpayer of the
City of Portland, a municipal corporation under the
laws of the State of Oregon. Under the charter of that
city, as provided for in section 118½, power is given
the council to issue and dispose of city bonds to an
amount not exceeding $2,000,000. The executive board
and its successors in office are authorized and empowered

by the charter to construct and build a bridge, with appropriate approaches and terminals, and with a clearance of not less than 65 feet above high water and not less than 96 13-100 feet above the city datum or low-water mark, across the Willamette, in such city, from Broadway street to the east side of the river. By the charter it is the duty of the City of Portland to have plans and specifications prepared by the city engineer for a complete bridge such as section 118½ authorizes, to be approved by the executive board and council. The city has a competent city engineer with sufficient deputies, assistants and employees to perform the duties provided in the charter, and further assistants can be furnished him, if necessary; the rate of compensation and the qualifications of such further assistants being provided for in the charter. Therefore there is no occasion for the city officers to employ a consulting engineer in violation of the charter. The City of Portland and its officers are neglecting to comply with the law, and to construct the bridge in accordance with the provisions of section 118½. They are violating the law and wasting the money of the city and its taxpayers, and are attempting to involve the former in a large, illegal debt, to the great injury of the city and its taxpayers by the defendants conspiring together to do the following illegal acts. The defendants are pretending to enter into contracts for the construction of the bridge when neither the city engineer nor any of his deputies have prepared any plans or specifications for such bridge and no plans have been prepared for a complete bridge. But they propose that the same be constructed on the unit plan, and that Ralph Modjeski be paid about $50,000 out of the funds of the City of Portland for his services. The defendant Ralph Modjeski is a nonresident of Portland and resides in Chicago, Ill. He has not taken the civil service examinations required by the

charter. The illegal plans and specifications have been drawn by him in order to waste the money of the taxpayers and to increase his compensation, to extravagantly specify unnecessary ornaments for the substructure so that it will be increased in cost at least $50,000, and to specify granite, and exceedingly expensive stone for piers, instead of concrete, at an increased cost of $50,000. The complaint further sets forth at great length the advertising for bids, and the letting of the contract for the building of the substructure, to the defendant, the Union Bridge & Construction Company. As a conclusion plaintiff avers that by reason of the facts alleged neither said contract nor bond is binding, and that the same are void.          AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Ralph R. Duniway*.

For respondent there was a brief and an oral argument by *Mr. Frank S. Grant,* City Attorney, and *Mr. William C. Benbow*.

MR. JUSTICE BEAN delivered the opinion of the court.

The gravamen of the complaint, as we understand it, is that the proceedings are void for the reason that it was illegal for the municipality to employ a consulting engineer, invite bids, and execute a contract based upon plans and specifications made by such engineer. Section 304 of the charter of the City of Portland provides in part as follows:

"The city engineer shall keep himself informed of the condition of all public streets, squares, parks, grounds, highways, bridges, sewers and street lights, and all plans and specifications for the construction, improvement or repairs thereof shall be made by him or under his supervision; and he shall have supervision of all surveys of streets, squares and parks, and all construction, improvements and repairs herein specified, whether such work be done by contract or otherwise. * *"

And section 305 of the charter:

"The city engineer shall be the consulting engineer of all boards and commissions authorized by this charter or created hereafter in pursuance thereof, but he shall receive no compensation or salary therefor other than his salary as city engineer."

From a careful examination of the allegations of the complaint, we fail to discover whether or not the plans and specifications referred to were made under the supervision of the city engineer. Neither is it shown that the work done by the consulting engineer was contrary to the views, nor without the sanction of the city engineer. Though the city has such officer as the latter who is competent, yet we notice from the complaint that it is not alleged that the consulting engineer employed by the city was not capable of drawing plans and specifications which would be more advantageous to the city and render the bridge safer than it would otherwise be. No facts are alleged indicating that by reason of having obtained the services of a consulting engineer the city, in the end, would not reap a greater benefit and secure a better bridge in return for the compensation agreed upon, and in the absence of a showing to this effect such result would be presumed. The city engineer does not complain that the consulting engineer is usurping his functions. The complaint contains no allegation of fraudulent intent on the part of the officers of the city.

1. The question therefore to be determined is whether or not the city had the power to make the contract of employment with the consulting engineer. It is contended on behalf of plaintiff that the city council has no power to create an office not provided for in the charter. Mr. Dillon, in his work on Municipal Corporations (vol. 1 [5 ed.] § 424), in regard to officers says:

"But where the services to be performed are professional or private, rather than public or official, an

employment under an ordinance for a fixed time, at a fixed sum for the period, has been held to be a contract, and not subject to be impaired by the corporation. Thus the appointment or election by the city council, for a fixed and definite period, of a city officer—for example, a city engineer, for one year, at the rate of $1,000 per year—if accepted by him constitutes, in the opinion of the Supreme Court of Massachusetts, a contract between him and the city. * *"

In distinguishing officers from employees, Mr. Dillon, in section 425 of the same work, says:

"The principles embodied in the previous section have their natural application to those persons in the municipal service who are properly to be regraded as employees rather than as public officers. It has been said that the essential element in a public office is that the duties to be performed shall involve the exercise of some portion of the sovereign power, whether great or small, but in the development of municipal affairs it has been found necsesary to an extent which is steadily increasing to employ persons who cannot fairly be regarded as officers, but who occupy positions which are merely employments. The question whether a person is an officer or a mere employee is one which is involved in difficulty, and for the determination of which it is probable that no satisfactory rule can be enunciated. The question who are officers and who are employees will almost necessarily be determined in each jurisdiction by decisions made upon the facts of each particular case, * * the duties attached to the position, and, to a minor degree, its relation, to the general scheme of the municipal government, as, for example, its subordination to the incumbent of another office or position. * *"

In the case of *People* v. *McAdoo*, 98 App. Div. 312 (90 N. Y. Supp. 689), it was held that a person whose duties are clerical and relate not to the public, but to the head of the department who is charged with the discharge of the duties of the office, is not a public officer. In *Quintard* v. *N. Y.* 51 App. Div. 233 (64 N. Y. Supp. 904), counsel for department of charities and correc-

tions of Brooklyn held to be an employee, and not a public officer. *Dunne* v. *N. Y.*, 116 App. Div. 331 (101 N. Y. Supp. 678), is a case where the inspector of masonry in New York was held to be an employee, and not an officer; also *Grieb* v. *Syracuse,* a case in which the superintendent of sidewalk and sidewalk repairs was held to be employee, and not an officer (94 App. Div. 133: 87 N. Y. Supp. 1083). In the case of *Cunningham et al* v. *Umatilla County et al.,* 57 Or. 517 (112 Pac. 437), it was decided that the county court had authority to employ a detective to act independently of the sheriff in the detection of the commission of crimes, and that a suit would not lie to enjoin the payment of a warrant drawn for the payment therefor. The fact that an official attorney is provided for a municipality by law does not preclude the municipality from employing other or additional attorneys to assist him in prosecuting or defending suits against the municipality, unless there is some special restriction in the charter. 2 Dillon (5 ed.) § 824, p. 1245, and notes of cases there cited.

2. Whenever a power is given by statute, everything necessary to make it effectual is implied. It is a well-established principle that statutes containing grants of power are to be construed so as to include the authority to do all things necessary to accomplish the object of the grant. The grant of an express power carries with it by necessary implication every other power necessary and proper to the execution of the power expressly granted. Lewis, Sutherland, Statutory Construction, § 508. In the case of *Avery* v. *Job,* 25 Or. 512, 524-525 (36 Pac. 293, 296). Mr Justice BEAN says: "No principle of equity jurisprudence is, perhaps, better established than that when the officers of a municipal corporation are clothed with a discretionary power, and are acting within the scope of such power, a court of equity will not sit in review of their proceedings, or

interfere by injunction, at the suit of a private citzen, unless fraud is shown, or the power or discretion is being manifestly abused to the oppression of the citizen. The fact that the court would have exercised the discretion in a different manner will not warrant it in interfering. 2 High, Injunction, 1240; *Spring Valley Waterworks* v. *City of San Francisco,* 82 Cal. 286 (22 Pac. 910, 1046: 6 L. R. A. 756: 16 Am. Rep. 116)."

3. It is asserted on behalf of the plaintiff that the consulting engineer could not act for the city in such capacity for the reason that he had not passed the civil service examinations. Following the enactment of a civil service law by the federal congress, states have enacted similar statutes for the purpose of giving some assurance to the citizens, electors, and taxpayers that, where the political views of the incumbent of the public office could not rightfully affect, or in any manner determine, the means or method of the performance of his official duties, and where he stood in no confidential position towards a superior, that in such case his appointment to, or his tenure of, such office, should in no way depend upon or be affected by his politics. An appointment was to be based solely on merits to be proved by competitive examination, free to all candidates; and the person who was best qualified, all proper circumstances being considered, should be appointed and should be continued in office until he voluntarily resigned or was removed for incompetency or misconduct after a hearing upon charges prefered against him. 1 Dillon, (5 ed.) § 397, p. 684. Section 306 of the city charter provides that:

"All appointments to and promotions in the subordinate administrative service of the city shall be made solely according to fitness, which shall be ascertained by open competitive examination, and merit and fidelity in service, as provided for in this article. The provisions of this

article shall apply to the incumbents of all offices, places and employments in the public service of the city except the following. * *"

Here follows a list of officers, including the city engineer, etc. A careful examination of the provisions of the city charter relating to civil service and a consideration of the scheme, purpose, and origin of the same leads us to believe that the employment of a special architect, consulting engineer, and the like was not intended to be governed by these rules. This must be so from necessity, otherwise the board of examiners would need to consist in part at least of members eminently skilled in that profession. The continuous employment of a skillful, experienced engineer, such as might be desired and also be necessary in undertaking the erection of public works of great magnitude, would entail a large expense to be borne by the taxpayers of the city. We think that the executive board had authority to employ a special consulting engineer in case it was deemed expedient and necessary.

4. Plaintiff also objects to the contract because of the expensive material and unnecessary ornaments provided for in the specifications, and for the reason that it was let upon the unit plan of construction. The charter does not provide in detail as to how the bridge shall be built. Great precaution should be taken in order to contribute to the permanency of the structure. The quality of material and the ornamentation, and the amount of expense to be incurred, therefor, are matters resting in the discretion of the executive board. Their decisions should not be interfered with when a showing of fraud or manifest abuse is lacking. Whether the contract shall be let upon the unit plan, or by some other method, should be decided by the board, and not by the court. 12 Cur. Law, p. 1479; *Shannon* v. *Portland,* 38 Or. 382 (62 Pac. 50) ; *Anderson* v. *St. Louis,* 122 Mo. 61 (27 S.

W. 610: 26 L. R. A. 707), and note. Statutes which
provide for letting public contracts on competition
usually grant some discretionary power to the munici-
pality which receives bids to determine what bid is more
advantageous to the public interest. The discretion of
the public authorities in determining who the best bid-
der is, is ordinarily not subject to review if fairly exer-
cised. 1 Page and Jones, Taxation by Assessment, § 497.
The validity of the act authorizing the construction of
the bridge in question, and the authority of the munici-
pal officers in that regard, was before this court in the
case of *Kiernan* v. *City of Portland,* 57 Or. 454 (111 Pac.
379: 112 Pac. 402). A motion to dismiss this appeal,
supported by affidavits, has been made by defendants
for the reason that the contract for the substructure of
the bridge has been practically executed, and it is impos-
sible for a court of equity to grant the relief sought. It
appears, however, that about $33,000 remains to be
paid upon the Modjeski contract. In view of this status,
we do not deem it necessary to discuss at length all the
questions referred to in the briefs. We are of the opin-
ion that as the case now stands the plaintiff is not
entitled to the relief prayed for.

Therefore the decree of the lower court is affirmed.

AFFIRMED.