# EDWIN L. BURNAP vs. THE BOARD OF WATER COMMISSIONERS OF NORWICH.

Second Judicial District, Norwich, October Term, 1919.
PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, Js.

An office which is created by an Act of the legislature cannot be abolished by a municipal board, though the latter be authorized to fill the office and, for cause shown, to remove the incumbent.

A Special Act passed in 1917 (17 Special Laws, p. 1059) provided that "the board of water commissioners of the city of Norwich may appoint a superintendent of water works of said city, and may fill a vacancy at any time thereafter occurring in said office." The Act further provided that such superintendent should be under the direction of the board, which should fix his salary, that he should hold office until removed for cause by the board after a full hearing upon reasonable notice, and that he might appeal from an order of removal to the Superior Court or a judge thereof. In June, 1917, shortly after this Act went into effect, the plaintiff was appointed superintendent, but a year later the board of water commissioners, without notice to the plaintiff and without any hearing, adopted a resolution abolishing the office of superintendent, and from this action the plaintiff appealed to a judge of the Superior Court. *Held* that this Act was not a delegation of power, as contended by the defendant, leaving it to the board of water commissioners to create the office or not at its discretion, but a direct creation by the General Assembly itself of the office in question, and therefore the board could not abolish the office nor by such an attempt remove the plaintiff from his position of superintendent.

The expression "may appoint" in a statute relating to an appointment by a municipal board, is to be construed as mandatory, when the public interest obviously requires the appointment to be made.

There is a clear distinction between an office and the incumbency of an office. An office comes into existence by force of the legislative Act; once created, it becomes a legal entity whose existence is not dependent upon whether it is in fact filled or not.

It is within the power of the General Assembly to confer upon a municipal board authority to create an office as well as authority to fill it.

An office which a municipal board has power to create, it ordinarily has power to abolish.

Argued October 21st, 1919—decided January 29th, 1920.

APPEAL by the plaintiff from the action of the defendant board abolishing the office of superintendent of waterworks, of which the plaintiff was the incumbent, taken to and tried by the *Hon. Joel H. Reed*, a judge of the Superior Court; facts found and judgment rendered for the plaintiff, and appeal by the defendant. *No error.*

*Joseph T. Fanning*, for the appellant (defendant).

*Frank L. McGuire*, with whom was *Hadlai A. Hull*, for the appellee (plaintiff).

GAGER, J. In 1917 the General Assembly passed an Act, public in form, concerning a Superintendent of Waterworks of the City of Norwich, approved May 16th, 1917 (17 Special Laws, p. 1059), as follows:—

"The board of water commissioners of the city of Norwich may appoint a superintendent of waterworks of said city, and may fill a vacancy at any time thereafter occurring in said office. Such superintendent shall be under the direction of said board, and shall hold office until removed for cause by said board, after full hearing upon reasonable notice. Such superintendent, when so removed, may, within thirty days after such removal, appeal therefrom to the Superior Court, or to a judge thereof, and said court is empowered to hear and determine such appeal, and such appeal shall be privileged in respect to its assignment for trial before such court or judge thereof. Said board shall fix the salary of said superintendent when said appointment is made."

In June, 1917, pursuant to the provisions of this Act, the plaintiff was appointed superintendent of waterworks of the city of Norwich at a salary fixed by the board. June 28th, 1918, the board adopted a resolu-

tion, without notice to the plaintiff and without any hearing, providing "that the office or position of the superintendent of waterworks be and the same is hereby abolished," and caused a copy of said resolution to be mailed to the plaintiff on June 29th, 1918. The appeal to the judge of the Superior Court is based upon the claimed invalidity of the vote of June 28th, 1918, and upon the claim that this action in effect amounted to a removal of the plaintiff from his office without hearing and without cause, and contrary to the provisions of the Act recited above.

It is substantially agreed that the specific question is, did the legislature, by this Act, create the office of superintendent of waterworks, or did the Act merely authorize the creation of the office by the board of water commissioners? If the legislature created the office, then the board of water commissioners has no power to abolish it, or to remove the occupant of the office except for cause and after full hearing. By whom, then, was the office created?

Prior to the Act in question there was no legislative recognition of the office of superintendent of waterworks. It was the duty of the president of the water board to "devote so much of his time and attention as may be necessary to the supervision, care and management of said waterworks . . . , and to such other duties connected with said waterworks as shall be assigned to him by said court of common council." Charter, 7 Special Laws, p. 200, § 83. Whatever powers the board of water commissioners had as to the creation of offices, if such they could properly be called, were implied from the general nature of the duties of the board and of its president. Manifestly, employees of various grades, skilled and unskilled, would, or at times might, be necessary for the construction, maintenance and operation of a system of waterworks for the city, and these the

board would be authorized to employ as the necessary means of accomplishing the purpose for which the board was created. And so it appears in the finding that the board has annually appointed a superintendent, and that since 1885 the duties of the superintendent have been defined by resolution of the board as "the supervision and direction of all outside work pertaining to the waterworks of the city of Norwich as directed by the board of water commissioners." The finding goes into detail as to what these duties in fact were, and they may be summarized as supervision and direction of all work outside the office of the water board pertaining to the waterworks, installation and repair of meters, service pipes and fixtures, keeping time-books of the field force, hiring and discharging labor, keeping the field-book of the board in which was written all needed facts concerning the reservoirs and water systems, estimating costs, having charge of guards and caretakers, instruction of foremen, laying out of the work, and generally oversight and superintendence of all matters in the field. During all this time, also, the duties of the president of the board as defined by the charter have been "the supervision, care and management" of the waterworks. While the Court of Common Council could have imposed upon the president other duties connected with the waterworks, it does not appear that this power has been exercised. When the Act in question was passed the plaintiff was acting in the capacity of superintendent by appointment of the board for one year from July 1st, 1916, and with the duties as defined by the resolution of the board, and in detail as stated above. Although the duties of the president, prescribed by charter, and the duties of the superintendent, prescribed by resolution of the board, might to some extent overlap, yet the duties of the superintendent were directed to the management and direction

of the physical work attendant upon the conduct of the waterworks, and were done under the direction of the board. The distinction between the duties of the superintendent and those of the president, was analogous to that between the duties of mill superintendent and those of general manager, as those terms are understood in a manufacturing business. That the services of this sort required and justified the appointment of some one to perform them, under whatever name, would appear both from the character of the work and from the finding that this had been the uniform practice since the waterworks were undertaken about 1867. The authority of the board to appoint and employ a superintendent with these powers has not, so far as appears, ever been questioned, nor would it seem that it could well be questioned. It is an implied power necessary to the accomplishment of the purposes of the board. It involves a hiring, but not the creation of an office.

The finding is silent as to any special condition necessitating the legislation of 1917. But the legislature and not the court is the judge of the policy and the necessity of its action. We must assume that the legislature intended to accomplish some practical change in the legislation affecting the powers of the water board, otherwise the Act would be pointless. The only change justifying legislative action which appears on the face of the Act, is to convert what had before been a matter of employment by the board into a matter of appointment by the board to a legally created office with a tenure lasting until removal for cause, and with duties and compensation to be determined by the board. That the Act does not categorically create the office and then provide how it shall be filled, is not material. The word "office" even need not appear, if the clear meaning of the language used necessarily implies that an office is created. 22 R. C. L. p. 421. Here, however,

the Act specifically refers to the position as an office. The board "may fill a vacancy at any time thereafter occurring in said office." Such superintendent "shall hold office until removed for cause." The power of removal from an office is quite different from discharge from an employment. It may have seemed wise to the legislature that a position of this practical importance, intimately related to the welfare of the city, requiring for the successful performance of its duties knowledge only to be gained by experience in the locality in which the works are located, and familiarity with the actual operation of the water system, should not be subject to the will of changing boards, or to the vicissitudes of local politics, and that the needs of the public would be better served by the legislative creation of the office with permanence of tenure and subject to removal only for cause.

The defendant contends that the Act in question is a delegation of power; that it does not create the office, but gives the board power to create it, and that any office the board in its discretion can create it can also abolish. The latter part of this proposition may be conceded. *State ex rel. Rylands* v. *Pinkerman*, 63 Conn. 176, 196, 28 Atl. 110; Mechem on Public Officers, § 466. Still the primary question remains, by whom was the office created? The defendant bases its argument upon the use of the word "may"; the board "may appoint a superintendent of waterworks," and argues that the existence of the office depends upon the exercise of a merely permissive power of appointment; that no office is created until the board acts; that the office thus becomes a creation of the board, and therefore may be abolished by the board.

If this were all the Act means it would have accomplished nothing of real importance, as shown by the history of the board's action with reference to the ap-

pointment of a superintendent. The defendant's claim ignores the recognized distinction between an office and the incumbency of an office. The office comes into existence by force of the Act. The officer is later appointed by the board. An office once created is a legal entity not depending for its existence upon whether it is in fact filled. This is clear from the much used expression, occurring also in the Act under discussion, "vacancy in office." The same idea underlies the law as to officers *de facto. State* v. *Carroll,* 38 Conn. 449; *Childs* v. *State,* 4 Okla. Crim. 474, 113 Pac. 545, 33 L. R. A. (N. S.) 563; *Heard* v. *Elliott,* 116 Tenn. 150, 92 S. W. 764. Undoubtedly the legislature might have conferred upon the board the power to create the office as well as the power of appointment. But its power was limited to the appointment and removal of the officer. *State ex rel. Stage* v. *Mackie,* 82 Conn. 398, 74 Atl. 759. The expressions in the Act, "may appoint" and "may fill a vacancy," refer grammatically and logically to the exercise of the appointing power and not to the creation of the office. Whether "may" in a statute is mandatory, directory, or permissive, is often a question of difficulty. We assume, as too obvious to require argument, that the office of superintendent of waterworks is for the public interest and public good. The board of water commissioners is empowered to appoint a superintendent. The public interest and public good require this appointment. In such case "may" is mandatory. This is stated as the settled law of both England and America in *Board of Supervisors of Rock Island County* v. *United States,* 71 U. S. (4 Wall.) 435, 18 L. Ed. 419. The Act there under construction gave a board of supervisors power to lay a special tax. The language was "may, if deemed advisable." The court held that this language, though permissive in form, was in fact peremptory. Public

interest was the test there applied. In *Lyon* v. *Price,* 41 Conn. 245, the language of the statute as to town meetings was, "special meetings may be convened when the selectmen shall deem it necessary, or on application of twenty inhabitants qualified to vote in town meeting." It was held that this language imposed a duty to call a meeting upon presentation of the application. This case was followed in *Cummings* v. *Looney,* 89 Conn. 557, 95 Atl. 19. See also *Gallup* v. *Smith,* 59 Conn. 354, 22 Atl. 334. The authorities are numerous. 25 R. C. L. p. 770; 36 Cyc. p. 1160.

The board did in fact act and appoint a superintendent immediately after the approval of the legislative Act in question, and this appointee, who was the present plaintiff, thereupon became clothed with the rights conferred and subject to the duties imposed by the Act. Any other construction violates both the language of the Act and its manifest purpose of securing fixity of tenure in an office of great practical importance.

We therefore hold that by the Act in question the legislature created the office of superintendent of waterworks, and as a consequence the board of water commissioners had no power to abolish it. The attempted abolition of the office by the board was in effect an attempt to repeal an Act of the legislature, and accomplished an unlawful removal of the plaintiff, who had been properly appointed to an office created by the legislature. Some minor questions have been discussed by counsel, but they become of no importance when it is once determined that the office was created by the legislature and not by the board of water commissioners.

The judgment of restoration was properly rendered upon the facts found.

There is no error.

In this opinion the other judges concurred.