## ALICE L. BURRELL *vs.* THE CITY OF BRIDGEPORT.

Third Judicial District, Bridgeport, April Term, 1921.

WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, JS.

In order to constitute one a public officer, he must be invested with some portion of the sovereign functions of the government to be exercised by him for the benefit of the public.

Compensation was claimed by the dependent of one who, at the time of the injury which resulted in his death, held a position under the director of public works in the city of Bridgeport called superintendent of bridges. There was no such officer known or recognized in the city charter, but the director was responsible for maintaining the streets and bridges of the city in good repair, and was authorized to employ necessary assistants at rates of compensation to be fixed by the common council. The council had passed an ordinance authorizing the director to appoint a superintendent of bridges at a specified salary. The deceased had no right to hire or discharge employees, and could not make repairs or purchase any material except upon the director's order and approval. *Held* that the decedent was not a public officer, but only an employee of the city, and hence that his dependent was entitled to compensation.

The finding of the Compensation Commissioner should be only a statement of the ultimate facts and of his conclusions, and should not contain recitals of testimony.

Argued April 13th—decided August 4th, 1921.

APPEAL by the defendant from a finding and award of the Compensation Commissioner of the fourth district in favor of the plaintiff, taken to and reserved by the Superior Court in Fairfield County, *Keeler, J.,* upon the facts found by the Commissioner, for the advice of this court. *Superior Court advised to affirm the award of the Compensation Commissioner.*

*W. Parker Seeley,* for the defendant.

*Samuel Reich,* with whom, on the brief, was *Murray Reich,* for the plaintiff.

GAGER, J. This case is a reservation in which, by stipulation, the sole question of law is whether Cornelius Burrell, the deceased, was at the time of his injury an employee of the city of Bridgeport within the meaning of the Workmen's Compensation Act.

Burrell's injuries, of which he subsequently died, happened on January 10th, 1920. Then and for some years previous he held a position, under the director of public works, called superintendent of bridges. By § 114 of the charter of Bridgeport (15 Special Laws, p. 538) it is the duty of the mayor to appoint a director of public works. The director "shall have charge of all of the streets and highways of said city. He shall be responsible for maintaining in good repair all streets . . . bridges . . . of the city. . . . He shall employ such assistants, including clerical assistants, as may be necessary for the performance of his duties, at such rate of compensation as the common council shall prescribe. . . . No employee appointed by said director shall incur any bill against the city without his written order." There is no such officer known or recognized in the city charter as superintendent of bridges. The director of public works employs assistants at the

rate of compensation determined by the common council. The necessity for and the duties of such assistants are determined by the director; the compensation by the common council. There is no provision in the charter authorizing the common council to create the office of superintendent of bridges. By the express terms of the charter, those who do the work in connection with bridges are employed by the director, and their duties are determined solely by the direction of the director.

In 1900 the common council passed an ordinance "that the director of public works be, and he is hereby empowered to appoint . . . b—A Superintendent of Bridges at $85 per month." This ordinance appears to have been amended from time to time, so far as salary was concerned, and to be still in force, although the city charter was revised in 1907. At the time of his injuries the deceased was holding the position of superintendent of bridges at a salary of $125 per month. It does not appear that the duties of this superintendent were in any way regulated or controlled by ordinance or by any action of the common council, nor was any term of office stated. The ordinance neither increased nor modified the powers of the director, and the entire efficacy of the ordinance seems to have been to fix the compensation of the superintendent, if the director saw fit to hire one.

Thus far we see that the charter—the original legislative Act—does not mention any office of superintendent of bridges, nor does the charter or any other legislative Act delegate to the common council the power to create such an office. Indeed, we do not think the common council attempted to create an office at all, but merely, in a somewhat permanent way, to determine the salary which might be paid the chief helper of the director of public works. The director of

public works under the charter, then, is the recognized public officer so far as the streets and bridges, etc., are concerned, and there is neither in the charter nor the ordinance any attempt to bestow any portion of the sovereign authority in reference to streets and bridges on any one else. This subject is discussed in *Burnap* v. *Water Commissioners*, 94 Conn. 286, 108 Atl. 802. In that case the board of water commissioners had, for many years, appointed a superintendent of waterworks with duties prescribed by the board. The duties of the president of the board were the supervision, care and management of the waterworks. As to this we said, p. 290: "The distinction between the duties of the superintendent and those of the president, was analogous to that between the duties of mill super-intendent and those of general manager, as those terms are understood in a manufacturing business. That the services of this sort required and justified the appointment of some one to perform them, under whatever name, would appear both from the character of the work and from the finding that this has been the uniform practice since the waterworks were undertaken about 1867. The authority of the board to appoint and employ a superintendent with these various powers has not, so far as appears, ever been questioned, nor would it seem that it could well be questioned. It is an implied power necessary to the accomplishment of the purposes of the board. It involves a hiring, but not the creation of an office." The situation in the present case is quite analogous to that of the superintendent of waterworks in the *Burnap* case, until the legislature in 1917 took a hand and created the public office of superintendent of waterworks.

From our examination of the charter and the only ordinance to which we have been referred, we conclude that Burrell, though designated as superintendent

of bridges, held no public office; that his position could
not be higher than the charter made it; that his position
was that of an employee of the city through the agency
of the director of public works. If it will add anything,
a reference to the duties of the superintendent in fact
will show that they were determined and carefully
limited by the director, and not by the charter or
ordinances, or in pursuance of any specific authority
so given, but under the general authority of the charter
authorizing the director to employ such assistants as
he might need. The Compensation Commissioner may
be taken as having found these duties as follows: "To
superintend the bridge tenders, gate tenders, laborers
employed in repairing bridges and to make a report of
the condition of bridges; that the deceased, who was
an electrician by trade, did some electrical work on
the bridges; that he had no right to hire or discharge
any employees; that he could make no repairs or pur-
chase any material except upon order and approval
by the director of public works." One occupying such
a position can no more be a public officer than was an
assistant foreman of the State highway department
in *Robinson* v. *State*, 93 Conn. 49, 104 Atl. 491, though
this precise question was not there litigated; no more
than the person in charge of the lawns around the
Capitol, referred to in *Sibley* v. *State*, 89 Conn. 682, 96
Atl. 161. That there were no elements of public
office in Burrell's position will appear from two quota-
tions from Mechem on Public Officers, defining public
office and the source of authority (§ 1): "A public
office is the right, authority and duty, created and
conferred by law, by which for a given period, either
fixed by law or enduring at the pleasure of the creating
power, an individual is invested with some portion of
the sovereign functions of the government, to be exer-
cised by him for the benefit of the public. The indi-

vidual so invested is a public officer." Again, in § 108, as to the source of the power to appoint, it is said: "But [even though the act of appointing officers may be deemed executive in its nature] the power to appoint officers, excepting, perhaps, those who are to assist him in the discharge of his personal executive duties, is not inherent in the chief executive, but must exist, if it exists at all, by virtue of the authority conferred upon him by the sovereign power."

Burrell was in fact simply a superintendent, foreman, overseer, call it as you may, employed by the director, looking to the director alone for instructions and responsible to the director alone. The method of employment was under the charter a hiring like that of any other employee under the director.

The director picked out his men and fixed their jobs; the common council determining their compensation. It seems so self-evident that Burrell, under the charter, is an employee working as such for the city, without any official trust or responsibility, authority or duty, imposed by law, and having no share of the sovereign power or functions of government vested in him, that we do not think discussion of *Sibley* v. *State*, 89 Conn. 682, 96 Atl. 116, the case of a county sheriff, and *McDonald* v. *New Haven*, 94 Conn. 403, 109 Atl. 176, the case of a city fireman, is at all necessary.

One observation we make upon the form of the finding: In the paragraph relating to Burrell's duties the form is that the director of public works testified to certain duties and limitations of action. This is not a finding of fact, but merely a finding that the director said so. No question was raised by counsel, and so we raise none, because there was probably no question at all about the truth of what the director said; but we do renew our caution as to making a finding in this form. Only ultimate facts and conclusions of the

Commissioner should appear; not recitals of testimony and mere conclusion of the Commissioner. *Saddlemire* v. *American Bridge Co.*, 94 Conn. 618, 627, 110 Atl. 63; *Hartz* v. *Hartford Faience Co.*, 90 Conn. 539, 540, 97 Atl. 1020.

The Superior Court is advised to affirm the award of the Compensation Commissioner.

In this opinion the other judges concurred.