## SHERWOOD L. ROWLAND *v.* T. FRANK HAYES.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued March 2d—decided April 6th, 1938.

*Charles O'Connor,* with whom, on the brief, was *Vincent A. Scully,* for the appellant (defendant).

*J. Warren Upson,* for the appellee (plaintiff).

HINMAN, J. The declaratory judgment sought in this action is to determine whether the plaintiff as comptroller of the city of Waterbury, or the defendant as mayor, has the right to appoint the assistants, clerks and stenographers in the office of the comptroller, and to remove them for cause. The judgment rendered was that the plaintiff has authority to appoint and remove his assistants and the defendant has no authority to appoint them but may order their removal for cause. The soundness of the conclusions that the plaintiff and not the defendant has this authority is the ultimate issue on this appeal.

The finding is that at the municipal election held October 5th, 1937, the plaintiff was elected for the term of two years commencing on the first Monday of January, 1938, and the defendant, who has held the office of mayor since January, 1930, was re-elected for a like term of two years. The charter of the city of Waterbury (Special Laws, 1931, p. 563 et seq.) makes detailed provision for the duties of the comptroller and for the conduct of the office. In the office of the comptroller are a number of positions filled by clerks, stenographers, auditors and accountants whose services are necessary for the proper conduct of the office. The plaintiff and the defendant each claim the right to appoint to all these positions and the power of removal therefrom.

From time to time, the defendant has made rules and regulations concerning the organization, management and operation of offices and departments including the comptroller's office, has caused a modern book-

keeping system to be installed in that office, directed that payment of teachers' salaries be made by the comptroller by check instead of cash, and has directed that the office be open during the noon hours. From time to time at the beginning of new terms the defendant has told comptrollers "to keep employees they had," but no evidence was offered of a direct appointment or discharge by the defendant of an assistant to the comptroller. None of the additions to the finding sought by the appellant which are material to the result are admitted or undisputed facts.

The trial court held and the parties are agreed that the issue is largely dependent upon the interpretation of the city charter as applied to the facts of the case. The defendant admits that the assistants in the comptroller's office are employees and not officers, also that no express power of appointment or employment of them is given, in the charter, to the mayor; nor is such power expressly conferred upon the comptroller. The necessity of such assistants being found and conceded, it follows that power and right to appoint or employ them must be implied from the necessities of the situation; the question is, in whom is such implied authority vested?

The charter provides, §§ 101 to 112, that the comptroller shall, under the charter and ordinances, be subject to the general direction of the mayor and the board of finance in all matters concerning the financial affairs of the city. He shall keep accounts for each of the city departments and all city officers and such other accounts as ordinances or the board of finance may direct. He shall keep a separate account for each specific item of appropriations, require each department officer when making requisitions upon him for the purchase of supplies to state against which item of the appropriations it is drawn and he is required to

charge the same against such appropriation. He shall not suffer any appropriation to be overdrawn or the appropriation for one item of expense to be drawn upon for any other purpose or by any department other than that for which the appropriation was made, except in case of transfers as provided. No requisition shall be issued unless sufficient funds to pay the same shall actually be in the treasury and if he certifies any bill, contract or claim in excess of the proper appropriation he is made personally liable therefor, together with his sureties. He shall prescribe the form of all accounts and of all reports rendered, have inspection and supervision of the accounts of all other departments and officers, and shall audit or cause to be audited all such accounts at least once in every six months and submit to the mayor a report of the condition of each with a summary of all accounts of the city exhibiting the revenues, receipts and expenditures, the sources from which the revenues and funds are derived, in what manner they have been disbursed, and the amount drawn against each item of appropriations, and the mayor shall cause such reports to be submitted to the boards of aldermen and finance. The comptroller shall, at the end of each fiscal year, or oftener if directed by the board of finance, also upon the death, resignation, removal or expiration of the term of any officer, audit or cause to be audited, examine and settle the accounts of such officer. He shall be the purchasing agent for the city and all its departments, boards or officers, and no claim for any article furnished the city or any of its departments, boards or officers shall be paid unless the same had been ordered by the comptroller. He is required to give bonds in the amount of $25,000, and to keep his office open during such hours as the mayor may direct. In case of the absence, inability or disability of the comptroller

the mayor shall have the power to appoint some person to perform his duties temporarily.

Various other duties and responsibilities of the comptroller are provided in other sections of the charter, including that he shall report the cash deficit and deficit of revenue of the fiscal year (§§ 72, 73); that all claims shall be submitted to and computed by him and certified to the board of finance, together with a statement of the available balance of the appropriation from which it is to be paid, also any debt of the claimant to the city (§ 86), and when claims are approved by the board, the comptroller is required to number and enter them and to countersign and disburse orders drawn by the city clerk on the treasurer for payment of the same (§ 87). Section 89 provides that "all contracts to be made or let for work to be done, except as in this act otherwise provided . . . shall be made by the departments or by the officers having the subject matter in charge." All bids or proposals for work for the city under contract are to be publicly opened in the presence of the comptroller and the certified check required to accompany each is to be drawn to his order (§ 90).

The mayor, by § 58, is designated as the chief executive officer of the city, and among his specific powers it is made his duty "to fill by appointment vacancies in office in all cases in which he is given by law the power of appointment." Under § 60 he is given the following powers: "(e) To control and supervise all officers and departments of the city or town and to that end shall have power to make and enforce such rules and regulations as he may deem advisable for and concerning the organization, management and operation of all the offices and departments and the agencies which may be created for the administration of its affairs, and, within the limits of appropriations,

to have power to fix the numbers and kinds of offices and positions and the rate of compensation for all officers and employees, except as otherwise provided;" (f) "whenever under this charter an office shall be created and no provision shall be otherwise made for the appointment of the incumbent thereof, the mayor shall have the power of appointment;" under (d) "to remove for cause, after due hearing, any elected official and to remove any appointed member of any board or any appointed officer at any time and at his discretion, except as herein otherwise provided."

The powers of appointment expressly given the mayor include the appointment, annually, with the consent of the board of finance, of a certified public accountant to audit the books, accounts and records relating to the fiscal affairs of the city [§ 60 (i)]; eight members of the board of finance (§ 65 as amended, Special Laws, 1937, p. 742); members of the retirement commission (§ 175 as amended, Special Laws, 1937, p. 934). Under § 210 the mayor appoints the members of the board of police commissioners, but (§ 212) the commissioners have sole power of appointment and removal of officers and members of the police department, and the like is true of the board of fire commissioners (§§ 222, 224). Appointment of the commissioners of public health is by the mayor (§ 234), but it is provided (§ 236) that the board appoint or employ a health officer, sanitary inspectors, a milk and food inspector, "and such other agents and employees as the mayor may, from time to time, designate and prescribe," and fix their compensation, "subject to the approval of the mayor." The board of commissioners of public works, appointed by the mayor (§ 239) is authorized to appoint all officers and employees of the department and fix their compensa-

tion, subject to approval of the mayor, except as otherwise provided (§ 242). The department of inspection consists of a building inspector and an electrical inspector, appointed by the mayor, and the city engineer as ex officio plumbing inspector, and shall have an assistant plumbing inspector appointed by the city engineer, and such other assistants and employees as the mayor shall appoint (§ 262). The board of commissioners of public welfare, appointed by the mayor (§ 263), is given power (§ 264) to appoint a superintendent of the poor, a superintendent of Brookside Home, a clerk of the board, a woman for welfare work "and to employ such other persons as may be necessary for the performance of the duties imposed upon said board, at such compensation as shall be fixed by said board with the approval of the mayor." Under § 269 as amended, Special Laws, 1933, p. 968, the board of education, the members of which are elected, is authorized to appoint or employ a clerk, an inspector of buildings, and such other officers and employees as may be necessary for the conduct of its business, fix their salaries and prescribe their terms of office and duties, all with the approval of the mayor. The board of park commissioners (§ 299) is authorized to appoint such superintendents, engineers, architects and other officers and employees as it may deem necessary, and fix and regulate the compensation of persons so employed.

The legal department consists of the corporation counsel, appointed by the mayor, an assistant corporation counsel, appointed by the corporation counsel, and such assistants as may be employed by the corporation counsel with the consent of the mayor (§§ 150, 151, 156). Special constables are appointed by the board of aldermen (§ 162). The city clerk appoints an assistant city clerk (§ 165), the town clerk an as-

sistant town clerk and not more than two registrars of vital statistics (§ 167). Each of the registrars of voters appoints a deputy and, subject to approval of the board of aldermen, a clerk, subject to removal by the registrar appointing him (§ 172), and the registrars appoint other officers for duties at elections (§ 170).

The revised charter, adopted in 1931, provides (§ 309) that "all persons holding positions in the administrative service of the city on the date this act shall take effect, whether elected or appointed, shall be deemed to hold their positions as though appointed under the provisions of this act." The manual of the city government for 1934-5, compiled by the city clerk, which was in evidence, lists among the appointed city officers an accountant, a purchasing agent, and an audit clerk as "appointed by comptroller," also three secretaries.

It appears from the foregoing resume of charter provisions and from our examination of the charter as a whole that it neither expressly gives to the mayor general or specific express powers to appoint subordinate assistants to heads of executive departments and commissions, nor affords indicia of any prevailing intent that they shall be so appointed. In those cases where authority to appoint or employ is expressly given it is in most cases conferred upon the officer or board officially charged with and in control of and responsible for performance, and the manner of it, of the duties administrative details of which are delegated to such assistants. These positions are not offices but a mere employment or agency resting upon contract. *State ex rel. Neal* v. *Brethauer*, 83 Conn. 143, 146, 75 Atl. 705; *State ex rel. Stage* v. *Mackie*, 82 Conn. 398, 401, 74 Atl. 759; *Burrell* v. *Bridgeport*, 96 Conn. 555, 558, 114 Atl. 679.

A right in the mayor to appoint an officer or em-

ployee cannot be implied from the mere fact that he is the chief executive officer of the city. 2 McQuillin, Municipal Corporations (2d Ed.) p. 109. In § 60 (e) of the charter the mayor is given general supervision over the officers and departments, with "power to fix the numbers and kinds of offices and positions and the rates of compensation for all officers and employees, except as otherwise provided." If there was an intention to also give him the power of appointment to these positions this would have been the conspicuously appropriate and logical place to so provide and the omission to do so may be regarded as significant, and as the trial court concluded, "the implication is that the Legislature did not intend [that] the mayor would so appoint."

Provision for the regulation of number and kinds of subordinate positions and the fixing of compensation attached thereto by some authority other than the immediate superior is common in city charters and clearly does not, of itself, carry with it a power of appointment to those positions. Most of the recent charters of aldermanic pattern authorize the officer or head of department to appoint or employ subordinates or persons to assist him in the performance of his public duties. Usually such power is conferred expressly but sometimes by necessary implication. 2 McQuillin, Op. Cit., § 520, p. 196. Ordinarily, unless otherwise provided, expressly conferred power to perform a municipal function carries with it authority to appoint such assistants as are necessary. 43 C. J. p. 603; *Mayor, etc., of New York* v. *Sands,* 105 N. Y. 210, 218, 11 N. E. 820; *Union Pacific Ry. Co.* v. *Ryan,* 2 Wyo. 408, 419; *Kennedy* v. *Mayor, etc., of New York,* 79 N. Y. 361; *Burrell* v. *Portland,* 61 Ore. 105, 111, 121 Pac. 1. A logical corrollary to the principle that municipal officers whose authority is defined by law

have no implied powers except such as are necessary to carry into effect the powers expressly conferred upon them (*Bridgeport Brass Co.* v. *Drew,* 102 Conn. 206, 214, 128 Atl. 413) is that they have such implied authority as is necessary thereto. *Richmond* v. *Norwich,* 96 Conn. 582, 589, 115 Atl. 11.

In *Board of Aldermen* v. *Covington,* 129 Ky. 410, 111 S. W. 1007, it was said (p. 413) concerning the right of a superintendent of public works to make appointments: "Charged with the general supervision of the work in connection with the streets, it is proper that he should have the appointment, subject to the approval of the council, of the persons who are to assist him in the performance of his duties. If the council could make all the subordinate appointments, the employees might be upon unfriendly or hostile terms with the superintendent, and thus impair the usefulness of the department under his control. This right of appointment in the superintendent, although not expressly conferred, follows by reasonable implication from a fair interpretation of the law, and it is apparent that the interests of the city and public will be better protected by making the superintendent responsible for the efficiency of the employees under him for the prompt and faithful performance of the duties placed in his keeping." Reference, without present repetition, to the extremely important functions and duties of the city comptroller under the charter, as already outlined, at once discloses that considerations in addition to, and surpassing those pertaining to positions such as that involved in the case just cited appertain to his office and demonstrate that necessity as well as public policy dictates that he have the choice as to those to whom administrative details of the duties of his office shall be entrusted.

It is his responsibility, personal as well as official,

to maintain effective supervision and check upon the purchases, expenditures, and general financial conduct of all of the executive officers and departments of the city. It is essential to that function that his assistants be not only competent, acceptable and loyal to and in harmonious relations with the incumbent but in a position to perform the tasks assigned to them in an unbiased manner, independently of and uninfluenced by dependence, for appointment and tenure, upon any other than their responsible superior, and especially upon anyone possessing general or immediate control and supervision of the officers and departments, which in this case includes the executive department, over whose financial operations it is the duty of the comptroller to maintain an effective oversight, check and restraint. *State ex rel. Schenck* v. *Barrett,* 121 Conn. 237, 243, 184 Atl. 379. Construction of the charter as impliedly authorizing the comptroller to appoint and employ his own assistants, sustaining the conclusions of the trial court to that effect, is not only warranted by the considerations we have advanced but accords with the rule that when one construction leads to public mischief which another interpretation will avoid, the latter is to be favored unless the terms of the law absolutely forbid. *Bridgeman* v. *Derby,* 104 Conn. 1, 8, 132 Atl. 25.

There is no error.

In this opinion the other judges concurred.