LA CHICOTTE v. CITY OF NEW YORK. (No. 6803.)

(Supreme Court, Appellate Division, First Department. February 5, 1915.)

1. MUNICIPAL CORPORATIONS (§ 220*) — EMPLOYÉS — WRONGFUL DISCHARGE — RECOVERY OF SALARY—SET-OFFS.

Where an assistant engineer in a city department of bridges, wrongfully discharged and subsequently reinstated while separated from the department, induced a contractor to bid on a bridge for which plans had been prepared prior to his discharge, and assisted the contractor in making the bid, and after his reinstatement, pursuant to an understanding that if the contract resulted in a profit he should be paid for bringing it to the contractor's attention, the contractor paid him a part of the profits, the city was entitled to offset such payment against the salary recoverable for the period of his wrongful separation from the municipal employment, since an employé wrongfully discharged may only recover what he would have received if continued in the employment less what he may have earned during the term, and it is not essential that the amount so earned shall have been actually paid during the term of unemployment, and the payment in question was not a gift or gratuity, but rested upon a sufficient moral consideration.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 599–608; Dec. Dig. § 220.*]

2. MUNICIPAL CORPORATIONS (§ 220*)—EMPLOYÉS—WRONGFUL DISCHARGE— RECOVERY OF SALARY—BURDEN OF PROOF.

In an action by a city employé wrongfully discharged to recover his salary, while the burden was on the city to reduce the damages by showing what the employé had earned in any outside employment, where it showed that he had accepted outside employment and had realized a large sum of money from the person by whom he was employed, the presump-

tion was that such sum was a payment for services and not a gift, and, if it was in fact a gift, the burden rested upon the employé so to prove.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 599–608; Dec. Dig. § 220.*]

3. MUNICIPAL CORPORATIONS (§ 123*)—"OFFICER" OR "EMPLOYÉ."

An assistant engineer in the department of bridges of the city of New York is an "employé" whose relation to the city is contractual and not an "officer."

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 341; Dec. Dig. § 123.*

For other definitions, see Words and Phrases, First and Second Series, Employé; Officer.]

4. MUNICIPAL CORPORATIONS (§ 1002*)—CLAIMS—FILING—INTEREST.

Where a city employé, wrongfully discharged, filed with the comptroller a claim for salary at the rate of $7,500 per annum and subsequently filed a second claim at the rate of $6,000 per annum, which was intended as a withdrawal of the prior claim, he could recover interest only from the filing of the second claim.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 2174; Dec. Dig. § 1002.*]

Appeal from Trial Term, New York County.

Action by Henry A. La Chicotte against the City of New York. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

E. Crosby Kindleberger, of New York City, for appellant.

J. Quintus Cohen, of New York City, for respondent.

SCOTT, J. Plaintiff was appointed principal assistant engineer in the department of bridges of the city of New York on February 1, 1903. The salary attached to the position at that time was $4,500 per annum, and plaintiff was paid at that rate until December 1, 1903, after which date he has been paid at the rate of $6,000 per annum. On December 31, 1904, plaintiff was separated from the department on the announced ground of lack of work. He sued out a writ of mandamus to compel his reinstatement, and after some litigation was reinstated on April 8, 1907. He was offered his original salary of $4,500, which was claimed by the head of the department to be the salary legally attached to the position. This he refused to accept for a long time; but he finally did accept it, protesting, however, that he was entitled to be paid at the rate of $7,500 per annum. In this action, by his amended complaint, he sues to recover salary during the period of his separation from the department at the rate of $7,500 per annum, and for the difference between $4,500 and $7,500 per annum from the date of his reinstatement to the entry of judgment.

[1, 2] The principal question raised at the trial was as to the right of the defendant to offset, against any amount found due from it to plaintiff, the sum of $40,000 paid to plaintiff some time after his reinstatement, but claimed to have been earned and paid for services rendered by him during the period of his separation from the department.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The facts relating to this payment of $40,000 are not in dispute. At some time while plaintiff was still in the employ of the city, plans had been prepared and bids solicited for building a bridge over the East River known as the Manhattan Bridge. The bids, however, were all rejected pursuant to an order made by the Supreme Court. In the early part of 1906, the city by the department of bridges invited other bids for the construction of Manhattan Bridge upon somewhat altered plans and specifications. Plaintiff met one Patrick Ryan, a bridge contractor who transacted business through a corporation known as the Ryan-Parker Construction Company. Plaintiff strongly urged Mr. Ryan to become a bidder for the contract to construct the bridge, pointing out the very large profits which he believed could be realized. Ryan decided to become a bidder, and plaintiff assisted in making up the bid, and, after the bid had been made and accepted, rendered service to Ryan, or his company, and was paid $1,500, being, as he estimates, compensation paid for three months' work of the nature above indicated. Plaintiff testified that at some time prior to his reinstatement in the bridge department he asked Ryan to agree to give him 15 per cent. of the profits to be realized from the contract. Ryan considered this percentage rather too large, but said that he would take care of plaintiff, mentioning 10 per cent. as a more reasonable percentage. Ultimately, when the work was nearly completed, Ryan paid to plaintiff the sum of $40,000. Plaintiff demurred somewhat at the amount, considering that he should receive a larger sum, but finally accepted it. The question whether or not this sum was paid to plaintiff as compensation for services rendered to Ryan was submitted to the jury for a special verdict, and the jury found that it was not. This finding in our opinion was distinctly against the evidence. After examining all the testimony, of which only a small part has been referred to, it seems to be clear beyond a doubt that what Ryan paid for, and what plaintiff understood he was being paid for, were the services plaintiff had rendered in bringing Ryan's attention to the opportunity to bid on the contract. The verdict of the jury was no doubt due in some measure to the rather involved and ambiguous form in which the question was submitted to them, and in the error of the court in refusing to charge that:

"If the jury believed that the $40,000 was paid to the plaintiff in appreciation of his having directed Mr. Ryan's attention to said contract for the erection of the Manhattan Bridge, and suggesting that he might secure the same, then it was for services."

The rule in such cases is that an employé who has been wrongfully discharged may recover as damages what he would have received if continued in the employment, less what he may have earned during the term. If the amount so earned exceeds the amount which would have been earned if the employment had been continued, obviously there has been no damage. Nor is it essential that the amount so earned shall have been actually received during the term of unemployment. It is sufficient that it has been earned during that period, even if the accepted payment has been made after the expiration of the term. In the present case plaintiff's opportunity to perform a service to Ryan,

and thus earn the large honorarium which he received, was the direct consequence of his separation from the bridge department; for, if he had remained in the city's employment, he could not, with any propriety, have performed for Ryan the services which he did perform. Nor is it of moment that there does not appear to have been any definite, formal contract on Ryan's part to pay plaintiff any part of the profits derived from the contract. There had been negotiations looking to such a contract, as to which the only difference seems to have been regarding the percentage to be paid; but it is quite clear that both plaintiff and Ryan were agreed that, if the contract resulted in a profit, as it did, plaintiff should be paid something for bringing the matter to Ryan's attention. The payment was not therefore purely voluntary, but rested upon a sufficient moral consideration. A payment made upon such a consideration is not to be classed as a gift or gratuity. Trustees v. Roome, 93 N. Y. 313, 45 Am. Rep. 217; Erskine v. Steele County (C. C.) 87 Fed. 630. It was also error to charge that the burden of proof lay upon the city to prove that the $40,000 was paid as compensation for services and not as a gratuity. It is undoubtedly true that the rule in such cases is that it rests with the defendant to reduce the damages by showing what the claimant has earned in any outside employment. Ware Bros. Co. v. Cortland Co., 210 N. Y. 122, 103 N. E. 890; Milage v. Woodward, 186 N. Y. 252, 78 N. E. 873. But, the defendant having shown that plaintiff has accepted outside employment and had realized a large sum of money from the person by whom he was employed, it was apparent that he must have received it either as a gift or as payment for services. The presumption is that it was not a gift (Nay v. Curley, 113 N. Y. 575, 21 N. E. 698), and, if it was in fact a gift and not the payment of a sum due from the payer, the burden rested on the plaintiff so to prove.

[3] We have thus far discussed the case on the assumption that plaintiff's relation to the city was contractual, i. e., that of employer and employé. Plaintiff urgently contends that he held an office to which the salary was attached as an incident. There was some confusion in the earlier cases as to when the holder of a position in the municipal service was to be considered an officer, and when an employé. We consider it to be now settled, however, that the holder of a position such as plaintiff held is an employé, and that his relation to the city is contractual. The authorities to this effect are numerous. We cite two recent ones. Allen v. City of New York, 120 App. Div. 539, 104 N. Y. Supp. 919; Lazinsk v. City of New York, 163 App. Div. 423, 148 N. Y. Supp. 808. Further error was made, in our opinion, in ruling as a matter of law that plaintiff's legal salary at the time of his separation from the services of the city, and during the period of his separation and after his reinstatement, was $6,000. We can find no legal authority for placing it at more than $4,500, at which it was fixed by the board of estimate and apportionment on April 30, 1902. It is true that he seems to have been paid at a higher rate for a time, but that is immaterial if there was no legal authority for so paying him.

[4] Finally, we think it was erroneous to allow interest from August 27, 1907. Plaintiff filed two claims with the comptroller, one on August 27, 1907, in which he claimed to be entitled to payment at the

rate of $7,500 per annum, and one on October 5, 1910, in which he claimed to be entitled to payment at the rate of $6,000 per annum. The filing of the second claim was virtually a withdrawal of the prior claim, and it appears in evidence that the plaintiff so intended. Since he is entitled to interest only from the date of legal demand, which is a prerequisite to any recovery, it follows that, if any sum at all was due him, it should bear interest only from the date of the later demand.

It follows that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.