# STATE ex Rel. NAGLE, Attorney General, Plaintiff, v. PAGE, Defendant.

(No. 7,374.)

(Submitted October 19, 1934. Decided November 7, 1934.)

[37 Pac. (2d) 575.]

*Mr. Raymond T. Nagle,* Attorney General, and *Mr. Jeremiah J. Lynch,* First Assistant Attorney General, for Plaintiff, submitted a brief; *Mr. Lynch* argued the cause orally.

*Messrs. Toomey & McFarland* and *Mr. James W. Chapman,* for Defendant, submitted a brief; *Mr. E. G. Toomey* and *Mr. Chapman* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This is an original proceeding in *quo warranto,* filed in this court by the Attorney General in his official capacity, seeking to oust the defendant from the position or office of state boiler inspector.

Plaintiff alleges in his complaint that on June 25, 1927, the defendant was at a duly and regularly called meeting of the Industrial Accident Board appointed boiler inspector and assigned to the western district of the state of Montana, with directions to begin his duties on the first day of July succeeding; that defendant qualified for the position, and on that date began to discharge his duties as state boiler inspector, and continued so to do until January 5, 1931; that prior to the date of appointment the Industrial Accident Board had regularly fixed the annual salary of the boiler inspector assigned to this district at the sum of $2,700, which was approved by the Governor of the state; that at the general election

held on November 4, 1930, defendant was duly and regularly elected state senator from Granite county for the term of four years commencing on the first Monday of January, 1931; that on that date defendant qualified for the office of senator by taking the oath of office, and ever since has been the duly elected, qualified and acting senator from Granite county; that he has actively participated in the proceedings of the senate of the state of Montana at both the regular and extraordinary sessions thereof occurring since that time, and has claimed and received his salary as senator; and that notwithstanding the fact that defendant has so held the office of senator, he has since the commencement of his term of senator continued to perform the duties of boiler inspector, except during such time as the legislature has been in session, and has received the salary as fixed by the board for his services rendered as boiler inspector. It is further alleged that he has unlawfully usurped and intruded himself into, and claimed the right to hold, the position of boiler inspector ever since the fifth day of January, 1931.

The defendant demurred to the complaint upon the ground and for the reason that it failed to state facts sufficient to constitute a cause of action. The cause is submitted to us on the demurrer.

It is apparent from the facts as alleged that after the election of the defendant to the office of senator he has at all times, except during such period as the legislature was in session, continued to perform his duties as state boiler inspector and received his salary therefor. At no time, however, was he receiving a double salary, but at all times he was receiving a salary either as state senator or as boiler inspector.

Section 7, Article V, of our Constitution, provides: "No senator or representative shall, during the term for which he shall have been elected, be appointed to any civil office under the state; and no member of congress, or other person holding an office (except notary public or in the militia) under the United States or this state, shall be a member of either house during his continuance in office."

It is the contention of the plaintiff that the defendant as ▮ state boiler inspector was occupying a state office at the time of his election to the state senate; and when he qualified as a senator and entered into the performance of his duties as such, he thereby resigned his office as state boiler inspector.

The defendant contends that the office of state boiler inspector is not a state office, and that therefore the constitutional provision is inapplicable, and that *quo warranto* will only lie as against an officer, and not an employee, of the state.

The question of primary importance for decision as here presented is whether one appointed as, performing the duties of, and receiving the compensation provided for, state boiler inspector, is a state officer or merely an employee of the state.

This court in the case of *State ex rel. Barney* v. *Hawkins*, 79 Mont. 506, 257 Pac. 411, 53 A. L. R. 583, defined the essential elements necessary in order for a public servant to be a public officer, as distinguished from a public employee, and after a prolonged discussion of the question summarized the result of its investigation in the following language: "After an exhaustive examination of the authorities, we hold that five elements are indispensable in any position of public employment, in order to make it a public office of a civil nature: (1) It must be created by the Constitution or by the legislature or created by a municipality or other body through authority conferred by the legislature; (2) it must possess a delegation of a portion of the sovereign power of government, to be exercised for the benefit of the public; (3) the powers conferred and the duties to be discharged must be defined, directly or impliedly, by the legislature or through legislative authority; (4) the duties must be performed independently and without control of a superior power, other than the law, unless they be those of an inferior or subordinate office, created or authorized by the legislature and by it placed under the general control of a superior officer or body; (5) it must have some permanency and continuity and not be only temporary or occasional. In addition, in this state, an officer must take and file an official oath, hold a commission or other writ-

ten authority and give an official bond, if the latter be required by proper authority."

Therefore, it becomes necessary for us to examine the law pertaining to the appointment and duties of state boiler inspectors, in order to determine the presence or absence of the essential elements of a public office, as announced in the above decision.

Inspectors of boilers were first provided for by statute in the territorial days, the first Act being found in the Laws of 1889, page 101. This Act was supplanted by sections 550 to 568, inclusive, of the Political Code of 1895. It is unnecessary for us further to notice these early provisions. The law as found in the Revised Codes of 1907 provided for the appointment of a boiler inspector by the Governor, with the advice and consent of the senate, a definite salary, a term of office for four years, unless sooner removed by the Governor, and the execution of an official bond. Section 1641 of those Codes provided for the appointment of assistant boiler inspectors, a clerk for the office, and the salaries of these subordinates. Section 1642 provided for the establishment of an office at the seat of government, and the promulgation of uniform rules for the inspection of steam boilers and the nature and extent of the examination of applicants for licenses to be issued to engineers and firemen. Sections 1643 to 1659, inclusive, contained various provisions pertaining to the duties of the boiler inspector and his assistants. Many of these sections were amended by Chapter 30 of the Laws of 1913; but aside from changes in salary, the providing of an additional assistant boiler inspector, and other changes relating to the performance of the duties of these appointees, they are unimportant here.

By the provisions of Chapter 92 of the Laws of 1917, the office of inspector of boilers, the office of inspector of mines, and the office of state coal mine inspector were combined "and placed under the general supervision of the Industrial Accident Board." (Sec. 1, now sec. 3034, Rev. Codes 1921.) Section 2, now section 3035, Id., provided that this board should ap-

point not to exceed four inspectors of boilers, whose term of office would be at the pleasure of the board. Section 3, now section 3036, provided that their salaries should be fixed by the board, subject to the approval of the Governor. Section 4, now section 3037, provided for the division of the state into districts and the assignment of a boiler inspector to each district. It was also provided therein that "said board shall have the power and it shall be its duty to provide rules and regulations under which said inspectors of boilers  *  *  *  shall perform their duties," and that the board might require them, in addition to their statutory duties, to make the annual inspections, reports and collections required by the safety provisions of certain sections of Chapter 96, Laws of 1915, now sections 3021 to 3023, inclusive, Revised Codes of 1921. Section 6 of this Act (Chap. 92, supra), now section 3039, provided that all laws then prescribing the qualifications, powers and duties of the inspectors of boilers, and which were not inconsistent with the provisions of the Act "are hereby continued in full force and effect," and all other Acts contrary thereto were repealed.

In 1921, by the provisions of Chapter 12 of the Laws of that year, the legislature, in conformity with Chapter 92 of the Laws of 1917, amended section 1639 of the Codes of 1907, which we have referred to supra, and there provided that the Industrial Accident Board should appoint not to exceed four inspectors of boilers, prescribe their term of office, and fix their compensation.

It now becomes necessary for us to examine the sections which pertain to the duties of boiler inspectors and which were not repealed by Chapter 92 of the Laws of 1917, being sections 3034 to 3039, inclusive, Revised Codes of 1921. Section 2713 prescribes the qualifications of applicants for the appointment as boiler inspector. Section 2714 provides for the inspection of all boilers brought into the state before use, with certain exceptions as to new boilers, and for the inspection of all boilers at least once a year, as well as the manner in which the inspection is to be made. Sections 2715 and 2716 enlarge the manner of making inspections, in detail. Section 2917

provides for additional inspections whenever in the opinion of boiler inspectors it is necessary. Section 2718 relates to the duties of owners of boilers with reference to permitting their inspection, the preparation for the same, and the penalties for nonobservance of these requirements. Section 2719 provides for the examination by the boiler inspector of applicants for licenses to operate steam boilers and machinery, and penalties for the operation of boilers by persons not so licensed. Section 2720 provides for the classification of engineers into grades or classes, four in number, and prohibits the issuance of licenses of the various classes unless the applicants have a certain number of years of experience in the operation of boilers. Section 2721 provides for the revocation of licenses by the inspector where engineers, through negligence, want of skill or inattention to duty permitted a boiler to burn or to become in bad condition. Section 2722 provides for the issuance of a certificate of inspection. Sections 2724 and 2725 provide for re-examinations of applicants who have failed to pass the examination. Section 2726, as amended by the Laws of 1923, Chapter 140, relates to the inspection of traction engines, certain heating plants, and other similar boilers, and to the duties of their owners with reference to operation and inspection. Section 2730 provides for the licensing of hoisting engineers by the boiler inspector.

It will thus be seen that the duties of the boiler inspector under these sections are twofold, namely, the inspection of boilers, and the licensing of engineers and firemen. Examinations of applicants are provided for by certain of these sections, and all of them contemplate examination and licensing of engineers and firemen. There is no attempt made in these various sections to prescribe the nature, scope or extent of the examinations of applicants, the only requirement being that persons who are applicants for certain classes of licenses must have had a certain number of years' experience in the operation of steam boilers and steam machinery. The method of inspection of boilers is quite definitely prescribed by statute according to certain inflexible rules. Prior to the enactment

of Chapter 92, Laws of 1917, the boiler inspector had the power to make rules; and doubtless it was the contemplation of the legislature that under this rule-making power the extent and scope of examination for licenses were to be determined by him, and likewise that the statutes with reference to the inspection of boilers would be supplemented by appropriate rules. By this amendment the power to make rules was preserved, but lodged in the Industrial Accident Board. Boiler inspectors were thereby placed under the general supervision of that board (sec. 3034, Rev. Codes 1921), and the power was granted to, and it became the duty of, the board to provide rules and regulations under which the inspectors of boilers performed their duties.

It is conceded that prior to the amendment of 1917 a portion of the sovereign power of the state was delegated to the state boiler inspector, and that the inspection of boilers and the examination of applicants for licenses as engineers were an exercise of this power. Sovereign power is exercised by that portion of the personal force of the state by which it thinks, acts, determines and administers, to the end that its Constitution may be effective and its laws operative. (*State ex rel. Boyle* v. *Hall,* 53 Mont. 595, 165 Pac. 757.) The mere fact that the law prescribes certain duties to be performed by one occupying a public position is not determinative of the fact that a portion of the sovereign power has been delegated, as in the case of a public administrator. (*Wooten* v. *Smith,* 145 N. C. 476, 59 S. E. 649), or of a court reporter. (*Robertson* v. *Ellis County,* 38 Tex. Civ. App. 146, 84 S. W. 1097.)

In the case of *Harrington* v. *State,* 200 Ala. 480, 76 So. 422, a somewhat similar situation was involved as here. Under section 1467 of the Alabama Code of 1907, no person was permitted to hold an office who had not been a resident of the state for a specified time. A full-time county health officer was employed who was not a resident of the state. Section 700 of the Alabama Code provided that the county health board should be under the general supervision and control of the state board of health. By section 703 it was made the

duty of the county board of health to perform a large number of enumerated duties. It was there held that such county health officer was not a public officer.

In the case of *Middleton* v. *Miller County*, 134 Ark. 514, 204 S. W. 421, it was held that a county health officer was not a public officer but an employee, where he performed such duties "as may be prescribed for him under the rules, regulations and requirements of the Arkansas State Board of Health."

In the following cases it was held that persons who performed certain duties for the benefit of the public, but over whom there was a superior officer who supervised their conduct and exercised discretion in administering the affairs of the office, were employees and not public officers: *Johnson* v. *State ex rel. Maxcy*, 99 Fla. 1311, 128 So. 853; *Jagger* v. *Green*, 90 Kan. 153, 133 Pac. 174; *In re Nagler*, 194 Wis. 437, 216 N. W. 493; *Burrell* v. *Bridgeport*, 96 Conn. 555, 114 Atl. 679; *La Chicotte* v. *City of New York*, 166 App. Div. 279, 151 N. Y. Supp. 566; *Devlin* v. *City of New York*, 149 N. Y. Supp. 1061.

Under the statutes heretofore reviewed, the power to supervise the conduct of the boiler inspector was vested in the Industrial Accident Board. Specific power was granted to the board by these statutes to make rules and regulations governing the conduct of the boiler inspector. The making of rules and regulations for this purpose was made a statutory duty of the board. The board is the officer, under these statutes, who administers the law, and exercises discretion and independence of action in the inspection of boilers and the licensing of engineers. The delegation of some part of the sovereign power under these statutes is to the Industrial Accident Board, and not to the boiler inspector. This important and essential element is absent from the position of boiler inspector. Therefore, we conclude that persons occupying the position of boiler inspector under our existing laws are not public officers, but employees of the state.

Actions in *quo warranto* may be brought against persons who usurp, intrude into or unlawfully hold or exercise a public office, civil or military. (Sec. 9576, Rev. Codes 1921.) A proceeding in *quo warranto* may be used only in the case of a public officer. The right of one who does not come within the definition of a public officer cannot be subjected to such a proceeding. (22 R. C. L. 662; *Adams* v. *McCaughey,* 21 R. I. 341, 43 Atl. 646; *In re Nagler,* supra.)

Since the defendant is not occupying a public office as state boiler inspector, this proceeding does not lie against him. Accordingly, the demurrer to the complaint must be, and is hereby, sustained, and the proceeding dismissed.

ASSOCIATE JUSTICE MATTHEWS and STEWART concur.

MR. CHIEF JUSTICE CALLAWAY and MR. JUSTICE ANGSTMAN not sitting.