STATE EX REL. NAGLE, ATTORNEY GENERAL, PLAINTIFF, v. KELSEY, DEFENDANT.

(No. 7,538.)

(Submitted February 26, 1936. Decided March 3, 1936.)

[55 Pac. (2d) 685.]

*Mr. Raymond T. Nagle,* Attorney General, and *Mr. Jeremiah J. Lynch,* First Assistant Attorney General, for Plaintiff, submitted a brief; *Mr. Lynch* argued the cause orally.

*Mr. H. L. Maury* and *Mr. A. G. Shone,* for Defendant, submitted a brief; *Mr. Maury* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an original proceeding in *quo warranto* brought by the Attorney General on behalf of the state against one Frank T. Kelsey for the purpose of ousting him from office.

At the outset we are here confronted by the contention that ▮ this court is without power and devoid of jurisdiction in the instant action. The determination of that question depends upon the following provision of our Constitution: The supreme court "shall have power in its discretion to issue and to hear and determine writs of habeas corpus, mandamus, *quo warranto,* certiorari, prohibition and injunction, and such other original and remedial writs as may be necessary or proper to the complete exercise of its appellate jurisdiction." (Sec. 3, Art. VIII, Montana Constitution.)

It seems to us that the matter of the jurisdiction of the court in such a proceeding is beyond question. Nevertheless the same contention has been urged from time to time ever since the adoption of the Constitution. It was presented to this court in the very early days of statehood. In the year 1891 the above-quoted provision of the Constitution was carefully considered by the court and the implications thereof explained and elaborated in most lucid and convincing fashion. Justice Harwood was there speaking for the court then consisting of Chief Justice Blake, Associate Justice De Witt and the author of the opinion. (*In re MacKnight,* 11 Mont. 126, 27 Pac. 336, 337, 28 Am. St. Rep. 451.) The matter should have been forever set at rest in this jurisdiction by that pronouncement, but apparently not all citizens are imbued with the understanding that legal principles are permanent, enduring, immutable.

The construction of the language of the constitutional provision there and here involved is indeed worthy of repetition, not alone because of the clarity of expression and the inescapable logic thereof, but because we find ourselves unable to restate those principles in improved manner or fashion. The writ under consideration in the *MacKnight Case* was *certiorari*, while here it is *quo warranto;* however, the power to issue either is derived from the same provision of the Constitution, if it obtains at all. Justice Harwood's analysis of the provision is indeed worthy of repetition and is, in part, as follows:

"Upon the hearing before this court, counsel who appeared in the court below, as *amicus curiae* in the proceedings, also appeared here, and raised the point that this court has no jurisdiction to bring up for review by writ of *certiorari* the proceedings of the lower court in the matter in question. In support of this position, he cites that clause of section 3, Article VIII of the Constitution, which provides that the supreme court 'shall have power, in its discretion, to issue and to hear and determine writs of habeas corpus, mandamus, *quo warranto, certiorari*, prohibition, and injunction, and such other original and remedial writs as may be necessary or proper to complete exercise of its appellate jurisdiction.' Counsel contends that the writ of certiorari, and others named in said clause can only be issued by this court when the same are necessary or proper in the exercise of its appellate jurisdiction, and therefore the issuance of the writ of *certiorari* in this case was irregular, because it was not in aid of appellate jurisdiction of this court. His position is that the latter words of said clause relate to the writs specifically mentioned, and restrict this court to the use of said writs, in the exercise of its appellate jurisdiction only.

"The case at bar presents a striking illustration of the error involved in such a construction of said clause of the Constitution as is contended for by counsel. It is clear that this court is given power to issue, hear, and determine all of the writs mentioned, among others the writ of habeas corpus. That is conceded by all, but the contention is that this court can issue, hear,

and determine said writs only in the exercise of its appellate jurisdiction. Now, how would the writ of habeas corpus be ordinarily used by the supreme court *in the exercise of its appellate jurisdiction?* So the writ of certiorari is among the writs which this court is expressly authorized to issue, hear and determine. Yet that writ is peculiarly inapplicable to use in aid of appellate jurisdiction; and, indeed, cannot be lawfully issued in cases where error may be reached by appeal. (Code Civ. Proc., sec. 555.) Is it to be presumed that the framers of the Constitution placed within the jurisdiction of this court these writs, the use and effect of which, in the actual administration of law, is so well defined, and some of which are in no way adapted to, or used in, the exercise of *appellate jurisdiction,* and then restricted the use of said writs by this court simply to the aid of its appellate jurisdiction? We think not. The clause carries no such purport with it. The writs named are defined in law; and their use in the administration of justice is fixed by long usage and well-settled principles.

"It is provided in the Constitution that this court shall have power 'to issue and to hear and determine' said writs, which are known and certain implements of courts. Their office being known, the framers of the Constitution understood exactly what jurisdiction was being granted by placing them within the power of the court to issue, hear, and determine. In that there was no uncertain grant of jurisdiction. But the Constitution does not stop there. It adds: 'And such other original and remedial writs as may be necessary or proper to complete exercise of its appellate jurisdiction.' These other original or remedial writs are restricted to the exercise of appellate jurisdiction. Why? Because otherwise this grant of jurisdiction to frame, issue, hear, and determine new writs, heretofore unknown in the administration of justice, would have been the granting of an unknown, unlimited, and undefined power; therefore such other writs were limited to the exercise of appellate jurisdiction."

The principles so enunciated more than forty years ago have had recognition by the courts and the bar of Montana generally

throughout the ensuing period. They seem as convincing and persuasive to us as they did to the court at that time. We have no doubt of the jurisdictional right of the court in this instance. (See, also, *State ex rel. Scharnikow* v. *Hogan*, 24 Mont. 379, 62 Pac. 493, 51 L. R. A. 958; *State ex rel. Clarke* v. *Moran*, 24 Mont. 433, 63 Pac. 390; *State ex rel. Whiteside* v. *First Judicial District Court*, 24 Mont. 539, 63 Pac. 395; *State ex rel. Anaconda Copper Min. Co.* v. *Second Judicial District Court*, 25 Mont. 504, 65 Pac. 1020; *State ex rel. City of Helena* v. *Helena Water Works Co.*, 43 Mont. 169, 115 Pac. 200; *State ex rel. Wallace* v. *Callow*, 78 Mont. 308, 254 Pac. 187; *State ex rel. Hahn* v. *District Court*, 83 Mont. 400, 272 Pac. 525; Rules of Montana Supreme Court, 87 Mont. xvii, xviii.)

Having assumed jurisdiction of the instant cause under the provision mentioned, we now have the matter regularly before us for appropriate disposition. The assumption of jurisdiction did not in any sense decide the ultimate rights of the parties or adjudicate any issues. We may now, after a consideration of all factors involved, decide such issues on the merits, with the resultant permission or refusal of a final writ.

This cause having been instituted by the Attorney General of the state for the purpose of ousting an incumbent from an office, it is not necessary that the pleadings set forth the name of any other claimant to the office, nor is it necessary that it be shown that anyone else is entitled to the office. (51 C. J. 347.)

The defendant is a state senator of the state of Montana, elected from Powder River county for the term of four years beginning the first Monday in January, 1933, and not yet ended. On March 18, 1935, the then acting Governor of Montana appointed defendant to the office of member of the Montana Relief Commission for a term ending February 1, 1937. Defendant shortly thereafter subscribed and filed an oath of office, and executed and filed an official bond to the state of Montana in the usual manner required of public officers. He thereafter entered upon the duties of the office, and from thence hitherto

14

has continued to discharge the same and to enjoy the emoluments thereof. All of these things are made to appear by proper and appropriate pleadings filed in the cause.

The proceeding to oust defendant is predicated upon the provisions of section 7, Article V, of our Constitution, which reads as follows: "No senator or representative shall, during the term for which he shall have been elected, be appointed to any civil office under the state; and no member of congress, or other person holding an office (except notary public or in the militia) under the United States or this state, shall be a member of either house during his continuance in office."

It at once becomes important to understand the nature of the ▆▆▆▆ position to which defendant was appointed and the powers, functions, and attributes thereof in order that it may be determined if it in fact is a civil office within the purview of the section; if the interdictions thereof extend to and affect the right of the defendant to hold the same, discharge the duties thereof, and receive the perquisites appertaining thereto.

Is the position a "civil office" as defined by this court in its previous decisions? (*State ex rel. Barney* v. *Hawkins*, 79 Mont. 506, 508, 257 Pac. 411, 53 A. L. R. 583; *State ex rel. Nagle* v. *Page*, 98 Mont. 14, 37 Pac. (2d) 575, 576.)

The position was created by the Twenty-Fourth Legislative Assembly, 1935, of which defendant was a member. By Chapter 109 of the 1935 Session Laws, the state of Montana, through its duly constituted legislative authority, enacted the statute for the avowed purpose of harmonizing, revising and codifying the sections of the law, theretofore passed, relating to the Montana relief commission and the emergency relief fund, and to create a state department of public relief, provide for the appointment, qualifications, terms of office, powers, duties and compensation of the Montana Relief Commission, etc. Thus was established what was designated as the "Montana Relief Commission," with a membership of five citizens of the United States and resident taxpayers of the state of Montana, to be selected and appointed

by the Governor in accordance with the Constitution and laws of the commonwealth.

The chapter contains twenty-three sections, with very elaborate and specific provisions as to the creation of the commission, its powers, duties and functions. It is not necessary to quote all of the provisions of that chapter in order to illustrate the purposes behind the legislative enactment. It is sufficient to point out that the declared purpose of the Act was to provide means for the sustenance of life, shelter and relief of distress among the people of the state of Montana, whom economic conditions, industrial inactivity, old age, unemployment or other causes over which they had no control had deprived of support, and to aid dependent children, and for such other economic security functions as are or may be assumed by the state. The Act specifically provided for the establishment of a state fund, and for a commission to administer the same, with powers of supervision and disposition; for co-operation with the federal authorities for the appointment of necessary administrators and county relief committees; for the adoption of rules and regulations for the government of the board and the transaction of its business; for the right to secure property and to take title thereto; for the right to enter into contracts with the agencies of the United States government; and for a multitude of other rights specifically enumerated in the Act.

It seems to us that the purposes of the Act are too plain to admit of question. It is strikingly evident that the Act carries a twofold purpose: (1) To aid directly in the relief of the adverse conditions enumerated; and (2) to create some responsible legal agency of the state endowed with power, discretion, and capacity to co-operate with and contract with the federal government in all matters germane to the general relief purposes designated in the Act, and to bind the state in that behalf. It would seem that no more comprehensive or unequivocal powers could have been granted to any state authority than those contained in the provisions of the Act relative to the powers and duties of the commission.

Are those powers official, and are the commissioners created by the Act civil officers? That seems to us to be the only question presented for decision here. If a member of the commission is an officer at all, he is a civil officer. If he is a civil officer within the definitions contained in *State ex rel. Barney* v. *Hawkins,* and *State ex rel. Nagle* v. *Page,* supra, then, of course, it follows that the provisions of the Constitution contained in section 7 of Article V, supra, are controlling.

In the cited cases the following rules were declared as applicable to the determination of the question: (1) It (the office) must be created by the Constitution or by the legislature, or created by a municipal or other body through authority conferred by the legislature; (2) it must possess a delegation of a portion of the sovereign power of the government to be exercised for the benefit of the public; (3) the powers conferred and the duties to be discharged must be defined directly or impliedly by the legislature or through legislative authority; (4) the duties must be performed independently and without control of a superior power other than the law, unless they be those of an inferior or subordinate office created or authorized by the legislature and by it placed under the general control of a superior officer or body; (5) it must have some permanency and continuity and not be only temporary or occasional. In addition, ''in this state, an officer must take and file an official oath, hold a commission or other written authority, and give an official bond, if the latter be required by proper authority.'' (*State ex rel. Nagle* v. *Page,* supra.)

As we have mentioned, all of the points enumerated by this court as necessary attributes to public office are substantially covered in Chapter 109, supra. There the matter of appointment, term of office, compensations, powers, duties and functions of the commission and its members are set forth in detail.

It has been charged, and it was argued in this proceeding, that the commission so created was not an independent functioning body, but that it was merely an adjunct or agency through which the federal government might function and distribute

relief to the people of Montana. Such a restricted construction is not possible under the provisions of the Act. The commission is specifically given the authority to acquire property for the state of Montana by purchase, exchange or gift, upon such terms and conditions and in such manner as it may deem proper, and to acquire the same by condemnation, if necessary, in accordance with, and subject to, the provisions of any existing law. It is specifically given authority to enter into contracts and leases with the United States of America, its instrumentalities or agencies, or any thereof. These are only a few of the enumerated powers conferred upon the commission by the Act, but they are sufficient to demonstrate that a part of the sovereign powers of the state were reposed in the commission. It is true that one of the announced purposes of the Act is stated as follows: "It is the purpose and intent of this Act that the commission shall be authorized and empowered to accept, cooperation from the United States of America, its instrumentalities, and agencies in all matters deemed necessary by the commission to carry out the purposes of this Act, and the commission shall have full power to do any and all things necessary in order to avail itself of such aid, assistance and cooperation under federal legislation heretofore or hereafter enacted by Congress or under any proclamation or order of the Executive, or of any executive department, or agency, of the United States, now or hereafter promulgated or made." (Sec. 16.) The power and authority to co-operate with the government of the United States does not in anywise detract from the other specific powers granted the commission.

A careful review of the powers and authority of officials and boards existing in the state of Montana at this time fails to disclose any board or official vested with more sweeping and comprehensive powers than those conferred upon the Montana Relief Commission. So we say that unquestionably the individuals who constitute the membership of the commission are civil officers, not mere state employees or even minor civil officers, but public officials, invested with large powers and comprehen-

18

sive discretion. A member of the commission is a civil officer of the state of Montana, and as such is subject to all of the provisions of the Constitution and laws of the state of Montana applicable thereto.

The courts are not concerned with the wisdom of legislative ██ enactments. It is not their function to respond to the necessities enumerated in the chapter. It was the province of the legislature to view the general situation and to legislate in such a manner as to best contribute to the welfare of the people of this state. That province on the part of the legislature came well within the allotted powers of that body as contemplated by the division of powers under our form of government. The power to make appointments of the members of the commission came clearly and properly within the scope of the functions of the Governor. However, the power and right of the Governor to make appointment was no more un-limited and unrestrained than was the power of the legislature in the creation of the positions. In each instance due and proper regard for the Constitution of the state, the fundamental law of the commonwealth, was required. The Governor had large latitude in the exercise of his discretion in the selection of the membership of the commission, but he did not have the power and authority to disregard the plain provisions of the Constitution.

The people of all states have been most zealous in the endeavor to maintain separate and distinct the three departments of government—legislative, executive and judicial. It was the people who declared that members of the legislature should not be eligible to simultaneously hold offices in other departments of state. So far as the function of the court is concerned, it is confined to a construction of the law. It can only ascertain and declare whether the law has been properly applied, that its provisions have been observed, or that they have been impinged upon.

We have no hesitancy in saying that in the case here presented a duly elected, qualified and acting state senator of the

state of Montana was ineligible to appointment as a relief commissioner under Chapter 109, supra, and that he is ineligible to hold the office, exercise its powers, or collect its emoluments.

In the course of the oral argument, it was suggested on behalf of defendant that Chapter 109, as a whole, was unconstitutional, and therefore the proceedings should fail. We shall not enter into a discussion of the constitutional considerations involved in that charge. It is sufficient for us to call attention to the fact that this court, in common with other courts, has very properly adopted the rule that only those adversely affected by an unconstitutional Act can question its validity. (*Holt* v. *Custer County*, 75 Mont. 328, 243 Pac. 811; *Pierson* v. *Hendricksen*, 98 Mont. 244, 38 Pac. (2d) 991.) It would be hard indeed to understand how this defendant has been or is prejudicially affected by the existence of Chapter 109. He has enjoyed the power, authority and emoluments conferred upon him by virtue of its existence, and apparently wishes to continue to do so. We are unable to see that any of those considerations are prejudicial to him. It is not Chapter 109 that now prejudices the right of the defendant to function as a public official. It is the Constitution of the state of Montana that constitutes the barrier to his further official activities.

In the pleadings and arguments it was suggested that others subject to like disqualification have held the same or similar offices in the state of Montana, all in disregard of the constitutional provision. This may be true, but such conditions do not constitute precedents for court rulings. Whenever the right of a legislator to hold another office during the term for which he was elected has been the subject of consideration by this court, only the case before the court has been decided. These decisions are proper precedents for the guidance of the appointive authority, but in the final analysis each case must of necessity stand upon its own facts.

The record of the court is consistent and unequivocal. Always the court has looked primarily to the question of whether the position involved was in reality an office. Wherever it was as-

certained that a legislator was attempting to hold an office in violation of the provisions of the Constitution, the court has said so in unequivocal terms, but, where the positions involved did not rise to the dignity of offices and could not be construed as being public offices in the light of the considerations hereinbefore enumerated, the court has announced a result favorable to the incumbent.

No case has ever come to this court with facts, circumstances and conditions as plain and unequivocal as those existing here. To deny the writ in this instance would be to nullify the provision of the Constitution. This we have no power to do.

In a case such as the one here under consideration, involving an act of an official of another department of state, this court is only interested in ascertaining if the act was in accordance with the powers and restrictions conferred and reposed by the people themselves, by the terms of the Constitution. It is only when acts are clearly without and in contravention of such powers that the court will move to nullify them. The courts must measure all such acts by the yardstick of the Constitution, and they cannot disregard that yardstick and toss it aside as so much worthless timber. If the people themselves desire a new and different yardstick, it is their province and right to adopt it, but, until they do, the courts of this state must continue to measure by the existing constitutional standards.

Let the writ issue.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES MATTHEWS, ANDERSON and MORRIS concur.