TURNBULL, ET AL., APPELLANTS, v. BROWN, ET AL., RESPONDENTS.

No. 9320.
Submitted May 20, 1954. Decided July 30, 1954.
273 Pac. (2d) 387.

Mr. Raymond F. Gray, Mr. D. E. Olsson, Ronan, for appellant.

Mr. J. A. Turnage, County Atty., Mr. Lloyd I. Wallace, Mr. R. H. Wiedman, Mr. F. N. Hamman, Polson, for respondents.

Mr. Jack L. Green, Missoula, for intervenors.

Mr. Gray, Mr. Olsson, Mr. Hamman and Mr. Turnage argued orally.

MR. JUSTICE FREEBOURN:

By complaint filed September 18, 1951, plaintiffs, on their own behalf and on behalf of 1,500 other taxpayers in Lake County, Montana, brought this action against the defendants, the county commissioners of Lake County, to permanently enjoin and restrain such commissioners from moving the office of the county extension agent from the city of Ronan, where it had been located for 28 years, to the city of Polson, the county seat. From a judgment in favor of defendants, holding that "plaintiffs take nothing by their complaint," the plaintiffs appeal.

In addition to asking for a permanent injunction to prevent the removal of such extension office from Ronan, the complaint sought a temporary restraining order preventing such removal during the pendency of the action, and an order to show cause why such temporary restraining order should not issue. A temporary restraining order issued on the filing of the complaint, along with an order to show cause why such temporary restraining order should not be made permanent pending the final determination of the cause upon the merits.

Defendants filed motions to: (1) Dissolve the temporary restraining order which issued on the filing of the complaint;

(2) quash the order to show cause; and (3) strike certain allegations from the complaint.

After hearings had and briefs filed, the district court, on April 2, 1952, granted the defendants' motion to dissolve the temporary restraining order, to quash the order to show cause, and to strike matters from the complaint. Thereafter, on April 14, 1953, the district court, without the filing of a demurrer or motion to dismiss the complaint, made and entered a judgment where it "ordered, adjudged and decreed: That the plaintiffs take nothing by their complaint and that the defendants herein do have and *is* hereby given judgment against the plaintiffs and for their costs and disbursements, in accordance with the order of the court made on the 2nd day of April, 1953."

The district court's judgment constituted a denial of plaintiffs' demand made in the complaint, "that a permanent injunction issue, enjoining and restraining each and all of the defendants from doing any of the acts complained of in this complaint and enjoining and restraining the defendants from removing the office of the county extension agent to the City of Polson, Lake County, Montana."

Rulings made by the district court in favor of defendants and against the Farmers' Union of Lake County, Lake County Pamona Grange, Tom Felton, president of the Farmers' Union of Lake County, and Clarence P. Bick, as master of the Lake County Pamona Grange, plaintiffs in complaints in intervention, striking such complaints from the files, were not appealed from and will not, therefore, be passed upon here.

It seems clear from a reading of the record showing what the district court did and said, that such court determined that the complaint did not state a cause of action and that the plaintiffs were not entitled to a permanent injunction restraining the defendants, county commissioners, from changing the office of the county extension agent from Ronan to Polson, the county seat, for the reasons that: "The court is of the opinion that the county agent * * * is a county officer; * * * that the office of the county extension agent must be maintained at the

county seat of the county; * * * [and] the defendant board of county commissioners have no discretion [in the matter] * * *."

The complaint alleged: That the office of the county extension agent of Lake County had been located in the city of Ronan for a period of 28 years and had for a number of years been so located rent free to Lake County; that such office was established and maintained at Ronan for the reason that Ronan was more centrally located and convenient for the plaintiffs and other farmers similarly located than any other city in Lake County, and was more accessible and more convenient to plaintiffs; that said office could be more economically operated and was least expensive to the taxpayers of Lake County at Ronan; that the greater number of farmers who require the services of the county extension agent live and are located south of Polson and that the office at Ronan is more accessible to the majority of these farmers and to the 4-H clubs and FFA clubs in Lake County.

It further alleged: That the defendant county commissioners "are granted only limited powers and do not have the right or authority to remove the office of the county extension agent from the City of Ronan to the City of Polson."

That the defendant county commissioners have ordered the "office, personnel and other facilities provided for the county extension agent moved from the City of Ronan to the City of Polson, Lake County, Montana. That said order was made without due consideration and without consultation with the farmers of Lake County. That thereafter a petition of 900 farmers, representing farm units in Lake County, petitioned the defendants herein, to-wit: The county commissioners of Lake County, to rescind said order but said defendants have refused * * * to rescind said order * * *.

"That the defendants do not have the right or authority to remove said office and that the removal of said county extension office to Polson will create a hardship and inconvenience to the farmers of Lake County and will tend to retard rather than facilitate the farming industry of Lake County, Montana.

"That said action of the defendants, to-wit: The county commissioners of Lake County, is being taken arbitrarily and without due regard to the rights of the plaintiffs and to the farmers generally in Lake County, Montana, and will create an irreparable injury to the plaintiffs herein unless restrained by this court."

The complaint further alleged that having exhausted their remedy by protest, the plaintiffs had no plain, speedy or adequate remedy at law, except by the issuance of a temporary order restraining the defendants from moving such office, and asked that an order to show cause be issued, along with such temporary restraining order, requiring the defendants to show cause why such temporary restraining order should not be made, enjoining and restraining the defendants from removing the office of county extension agent to Polson extending until the final determination upon the merits.

Under the conditions here existing and for the purposes of this appeal, we consider the allegations of the complaint true, as though the district court had sustained a general demurrer to the complaint and plaintiffs had appealed from an order dismissing the complaint for refusal to further plead. See Mills v. Pope, 90 Mont. 569, 4 Pac (2d) 485; Toomey v. Penwell, 76 Mont. 166, 245 Pac. 943, 45 A. L. R. 993; French v. Lewis & Clark County, 87 Mont. 448, 288 Pac. 455.

In order to spread useful and practical information on subjects relating to agriculture and home economics among the people of the United States, and to encourage the application of the same, Congress in 1914 permitted the inauguration, in connection with state agricultural colleges, of agricultural extension work which was to be carried on in cooperation with the United States department of agriculture. 7 U. S. C. A., Agriculture, sec. 341, C. 79, sec. 1, 38 Stat. 372, May 8, 1914.

The spreading and imparting of this knowledge and information is known as cooperative agricultural extension work and consists "of the giving of instruction and practical demonstrations in agriculture and home economics to persons not

attending" agricultural colleges and in "imparting to such persons information on said subjects through field demonstrations, publications, and otherwise; and this work shall be carried on in such manner as may be mutually agreed upon by the Secretary of Agriculture and the State agricultural college * * *." See 7 U. S. C. A., Agriculture, sec. 342, C. 79, sec. 2, 38 Stat. 373, May 8, 1914; also State ex rel. Jones v. Erickson, 75 Mont. 429, 244 Pac. 287.

For the purpose of paying the expenses of such cooperative agricultural work, Congress appropriates certain money each year to be paid to the states assenting to the provisions of the federal extension work law and which appropriate an equal amount for carrying on such extension work. Plans for such extension work shall be submitted by the proper officials of each college and approved by the secretary of agriculture. See 7 U. S. C. A., Agriculture, sec. 343, C. 79, sec. 3, 38 Stat. 373, May 8, 1914.

In 1915 the legislature of Montana, accepting the benefits of the federal cooperative Agricultural Extension Work Act, enacted a law, which with amendment since made, is now R. C. M. 1947, sec. 16-1130, as amended by Chapter 204, sec. 1, Laws of 1949, pp. 503, 504, and provides as follows: "Extension work in agriculture and home economics—county commissioners may appropriate money for. The county commissioners of any county in the state of Montana may appropriate money from the general funds of the county treasury, or from funds provided by special levy, which the said county commissioners are hereby authorized to make at the same time as other levies for county purposes, *for the purpose of carrying on extension work in agriculture and home economics within the said county in cooperation with the Montana state college and the United States department of agriculture.* The amount of such appropriation in any county, its method of expenditure, *the responsibility for the direction of the work, and the procedure of appointing agents, the compensation and conditions of service of such agents, shall be covered in memoranda of agreement*

*between the county commissioners and the Montana state college."* Emphasis supplied.

No memoranda of agreement, if any, between the state college authorities and the county commissioners of Lake County are before us.

The extension agent is not a county officer who, under R. C. M. 1947, sec. 16-2413, must keep his office "at the county seat." Not only does the law bringing into existence the extension agent fail to designate him as a "county" agent, but R. C. M. 1947, sec. 16-2403, which enumerates who are county officers, makes no mention of an extension agent.

In Gagnon v. Jones, 103 Mont. 365, 62 Pac. (2d) 683, 684, this court said: "The 'officers' of a county are enumerated in section 4725 of the Revised Codes [1935, R. C. M. 1947, sec. 16-2403], and the test for determining whether an appointee is a public officer has been declared by this court. State ex rel. Nagle v. Page, 98 Mont. 14, 37 Pac. (2d) 575; State ex rel. Barney v. Hawkins, 79 Mont. 506, 257 Pac. 411, 53 A. L. R. 583."

Nor does an extension agent meet the tests required to make his position or job a public office of a civil nature. State ex rel. Barney v. Hawkins, 79 Mont. 506, 257 Pac. 411, 53 A. L. R. 583; State ex rel. Nagle v. Page, 98 Mont. 14, 37 Pac. (2d) 575.

For the reasons stated the judgment of the district court is reversed and the cause remanded to the district court with directions to deny defendants' motions, viz., to dissolve the temporary restraining order, to quash the order to show cause, and to strike matters from the complaint.

MR. CHIEF JUSTICE ADAIR and MR. JUSTICE BOTTOMLY, concur.

MR. JUSTICE ANGSTMAN:

I dissent. In my opinion R. C. M. 1947, sec. 16-1130, as amended by Chapter 204, Laws of 1949, does not contemplate

that agreements between the county commissioners, the Montana state college and the United States department of agriculture should have anything to do with fixing the place where the office of the county extension agent shall be located. I think that question under the law is one committed to the discretion of the board of county commissioners and it matters not whether the county agent be considered an officer or only an employee.

I think the only way we can place the trial judge in error here is to usurp the functions of the board of county commissioners as the majority of this court did in State ex rel. Taylor v. Board of County Commissioners, 128 Mont., 102, 270 Pac. (2d) 994, but this I think we should not do.

Furthermore, if the law does contemplate that the agreement between the three agencies shall fix the place where the extension agent shall have his office, the resolution of the board of county commissioners would indicate that the secretary of agriculture will insist that it be located at Polson. That resolution recites that "the Secretary of Agriculture has requested that all agencies of the department consolidate their activities in each county so as to render more efficient service to the people on a unified agricultural program, and because two of the said offices are already located at Polson and it is customary to locate the county extension agent's office in the county seat in the county in which he is stationed * * *." Therefore the change was ordered made.

If the contract is now silent as to the place where the agent shall maintain his office or place of employment, it seems clear to me that the only thing which the majority opinion will accomplish will be that of causing the agencies to clarify the existing contract so as to place the office of the extension agent at Polson where the agricultural department desires to have it and where the county commissioners think it should be.

They are two of the three parties to the agreement and it seems extremely unlikely in view of the desire of the depart-

ment of agriculture that they will make a contract to have the extension agent any other place than in Polson.

. I think the judgment should be affirmed.

MR. JUSTICE ANDERSON:

. I concur in the foregoing dissenting opinion of MR. JUSTICE ANGSTMAN.